Glenn Steward
NAME

V62765
PRISON NUMBER

P.O. Box 799001
CURRENT ADDRESS OR PLACE OF CONFINEMENT

San Diego Ca, 92179-9001
CITY, STATE, ZIP CODE

2254 ✓ 1983 ___
FILING FEE PAID
Yes ___ No ✓
IFP MOTION FILED
Yes ✓ No ___
COPIES SENT TO
Court ✓ ProSe ___

**ORIGINAL**

FILED
APR - 7 2008
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY [signature] DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

Glenn lee STEWARD,
(FULL NAME OF PETITIONER)

PETITIONER

v.

Robert Hernandez,
(NAME OF WARDEN, SUPERINTENDENT, JAILOR, OR AUTHORIZED PERSON HAVING CUSTODY OF PETITIONER [E.G., DIRECTOR OF THE CALIFORNIA DEPARTMENT OF CORRECTIONS])

RESPONDENT

and

_______________,

The Attorney General of the State of California, Additional Respondent.

Civil No. '08 CV 0632 BTM CAB
(TO BE FILLED IN BY CLERK OF U.S. DISTRICT COURT)

## PETITION FOR WRIT OF HABEAS CORPUS

UNDER 28 U.S.C. § 2254
BY A PERSON IN STATE CUSTODY

1. Name and location of the court that entered the judgment of conviction under attack: San Bernardino county central Dept. 351 N. Arrowhead Ave, Ca 92415
2. Date of judgment of conviction: 11.3.2004
3. Trial court case number of the judgment of conviction being challenged: FSB 04153.002
4. Length of sentence: 43 Years

5. Sentence start date and projected release date: 12·02·04/ 5/25/2040

6. Offense(s) for which you were convicted or pleaded guilty (all counts): Second degree Robbery, Attempted Robbery/

7. What was your plea? (CHECK ONE)
   (a) Not guilty ☒
   (b) Guilty ☐
   (c) Nolo contendere ☐

8. If you pleaded not guilty, what kind of trial did you have? (CHECK ONE)
   (a) Jury ☒
   (b) Judge only ☐

9. Did you testify at the trial?
   ☐ Yes ☒ No

**DIRECT APPEAL**

10. Did you appeal from the judgment of conviction in the **California Court of Appeal**?
    ☒ Yes ☐ No

11. If you appealed in the **California Court of Appeal**, answer the following:
    (a) Result: Denied
    (b) Date of result, case number and citation, if known: 6·24·06/ NO·E037176
    (c) Grounds raised on direct appeal: INSUFFICIENT EVIDENCE/DUE PROCESS IMPOSITION OF CONSECUTIVE SENTENCES/ INEFFECTIVE ASSISTANCE OF COUNSEL /CUMULATIVE ERRORS

12. If you sought further direct review of the decision on appeal by the **California Supreme Court** (e.g., a Petition for Review), please answer the following:
    (a) Result: DENIED with no PREJUDICE
    (b) Date of result, case number and citation, if known: AUG 23/06
    (c) Grounds raised: SAME AS ABOVE

13. If you filed a petition for certiorari in the **United States Supreme Court**, please answer the following with respect to that petition:

(a) Result: N/A

(b) Date of result, case number and citation, if known: N/A

(c) Grounds raised: N/A

## COLLATERAL REVIEW IN STATE COURT

14. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the **California Superior Court**?

☒ Yes ☐ No

15. If your answer to #14 was "Yes," give the following information:

(a) **California Superior Court** Case Number: 92-04

(b) Nature of proceeding: TRial

(c) Grounds raised: INEFFECTIVE ASSISTANCE OF COUNSEL / DUE PROCESS / IMPOSITION OF CONSECUTIVE SENTENCES CUMULATIVE ERRORS

(d) Did you receive an evidentiary hearing on your petition, application or motion?

☐ Yes ☒ No

(e) Result: N/A

(f) Date of result: N/A

16. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the **California Court of Appeal**?

☒ Yes ☐ No

17. If your answer to #16 was "Yes," give the following information:

(a) **California Court of Appeal** Case Number: SAME RESULTS ON

(b) Nature of proceeding: PAGE TWO

(c) Grounds raised:

(d) Did you receive an evidentiary hearing on your petition, application or motion?

☐ Yes ☒ No

(e) Result: N/A

(f) Date of result: N/A

18. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the **California Supreme Court**?

☒ Yes ☐ No

19. If your answer to #18 was "Yes," give the following information:

(a) **California Supreme Court** Case Number: SAME RESULTS ON

(b) Nature of proceeding: PAGE 3

(c) Grounds raised:

(d) Did you receive an evidentiary hearing on your petition, application or motion?

☐ Yes ☒ No

(e) Result: N/A

(f) Date of result: N/A

**20.** If you did ***not*** file a petition, application or motion (e.g., a Petition for Review or a Petition for Writ of Habeas Corpus) with the California Supreme Court, containing the grounds raised in this federal Petition, explain briefly why you did not:

APPEllate COUNSEL Failed to bring And Raised The ISSUE on APPEal, SO I RaiSEd THE ISSUE on HABEAS CORPUS FOR trail cousel Failing to invEtigate information/and FAiling to objected to HEaRY SaY STATEMENTS.

## COLLATERAL REVIEW IN FEDERAL COURT

**21.** Is this your **first** federal petition for writ of habeas corpus challenging this conviction?
☒ Yes ☐ No (IF "YES" SKIP TO #22)

(a) If no, in what federal court was the prior action filed? ______

(i) What was the prior case number? ______

(ii) Was the prior action (CHECK ONE):

☐ Denied on the merits?

☐ Dismissed for procedural reasons?

(iii) Date of decision: ______

(b) Were any of the issues in this current petition also raised in the prior federal petition?
☐ Yes ☐ No

(c) If the prior case was denied on the merits, has the Ninth Circuit Court of Appeals given you permission to file this second or successive petition?
☐ Yes ☐ No

---

CAUTION:

- **Exhaustion of State Court Remedies:** In order to proceed in federal court you must ordinarily first exhaust your state court remedies as to each ground on which you request action by the federal court. This means that even if you have exhausted some grounds by raising them before the California Supreme Court, you must first present ***all*** other grounds to the California Supreme Court before raising them in your federal Petition.
- **Single Petition:** If you fail to set forth all grounds in this Petition challenging a specific judgment, you may be barred from presenting additional grounds challenging the same judgment at a later date.
- **Factual Specificity:** You must state facts, not conclusions, in support of your grounds. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do. A rule of thumb to follow is — state who did exactly what to violate your federal constitutional rights at what time or place.

---

8. GROUNDS FOR RELIEF

**Ground 1:** State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(if you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

Petitioner was DENied effective assistance OF Counsel Fore failing to Object to out of Court statements.

a. Supporting facts:

Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where)*. *(If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

Petitioner was convict of a out of Court hearsay Statement, used by the prosuction in his closing Argument to place Petitioner at the robbery. And two allow the jury to Make an erroneous factual determination". And Counsel's failure to object to hearsay Statement, denied Petitioner the right to a Meritorious issue for appeal, as well as for Trial, And the Judgment Must be Reversed.

b. Supporting cases, rules, or other authority (optional):

*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

OHIO V. RObert 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 NAMet V. 373 U.S. 179, 187, 83 S.Ct. 1151, 1155, 10 L.Ed.2d 297. Strickland V. Washington 466 U.S. 80 L.Ed.2d 674 ChaMbers V. Mississippi 410 U.S. 284, 295, 93 S.Ct 1038, 1046, 35 L.Ed.2d. 297.

7. Ground 2 or Ground 2 (if applicable):

The evidence in Petitioner's case in counts 1 And 2 Was insfficient to support Petitioner's convictions in Counts 1 And 2.

a. Supporting facts:

The evidence was insufficient to supporting Petitioner's convictions in Counts 1 and 2. The Prosecution used, out of court hearsay statement to place co-defendant at the store that was robbed. And used Eddie Hughes out of court statement, that co-defendant was in possession of his wallet, and there was no sufficient evidence to place co-defendant in thes robbery. And MR. Hughes said he was approached by a white Hispanic And that he take his wallet and pager. And made statements that co-defendant girl was in poss ession of his wallet, which was later recovered by police and retuned to Hughes. And Prosecution used this evidence to place co-defendant at the robbery, Than to Argue that petitioner Finger print was recovered of a box of cigars on the floor, so the Petitioner had to have robbed the place, And the jury knows that petitioner was placed at other Robberies by the co-defendAnt. And The statement by Hughes and Petitioner's Fingerprite allowed the teire of Fact to make an erroneous determination.

b. Supporting cases, rules, or other authority:

Borum united states 380 F.2d 595 (1967) Jackson v. Virginia 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed2d 560) Ohio v. Roberts 443 U.S. 56 100 S.Ct. 2531, 65 L.Ed 2d. 597)

6. GROUNDS FOR RELIEF

**Ground 1:** State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(if you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

TRial Counsel was ineffective for failing two invesigate the Prosecution First Amendment information.

a. Supporting facts:

Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where)*. *(If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

Trial counsel was ineffective for failing two invesigate the Prosecution First Amendment information. And by failing two do So denied Petitioner the right to Trial Counsel. And allowed the jury to convict Petitioner on a on charged offense. And Petitioner was charged with robbery by force and fear) But the court instructed the jury they can find Petitioner guilty by Force OR Fear not needed both to convict Petitioner. Lessing the Prosecution case.

b. Supporting cases, rules, or other authority (optional):

*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

Strickland v. Washington 466 U.S. 668, 80 L.Ed.2d 674) E.G. Geders v. United States 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed 2d. 592) United States v. Young 730-221-222 (5th CIR (1984) IN RE Winship 397 U.S. 358) United States v. Ford 872 F.2d 1233)

The Trial Court Illegally imposed consecutive terms, As well as aggravated terms not found by a Jury And The Trial Court Abuse his Discretion.

a. Supporting facts:

Petitioner was sentenced to Consecutive terms of imprisonment for all Counts, based on the factual finding that the offenses constituted separate acts and OR/ threats of violence. The imposition of consecutive sentences, based on factual findings made by the trial Court using a preponderance statandard of proof. And any fact other than a prior conviction, must be submitted to a jury. And the imposition of consecutive term rest on factual findings by a jury not a Judge. And this depriving Petitioner the right to jury trial. And the factual findings was never found true by jury. And The Trial Jugde Abuse his Discretion.

b. Supporting cases, rules, or other authority:

Cunningham v. California No. 05-6551, Blakey v. Washington 124 S.ct 2531, 159 L.Ed.2d403) Chapman v. California 386 U.S. 18) Yates v. Evatt 500 U.S. 391, 404) Rose v. Clark 478 U.S. 570, 578) Sullivan v. louisiana, 508 U.S. 275) Apprendi v. New Jersey 120 S.Ct 2348)

enhancement." *(if you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

The Trial Court Prejudicially Erred And Denied Petitioner Due Process of law when it instructed the jury that it Could find Petitioner guilty of Robbery on Basis of Evidence that did not Rationally support an inference that he was guilty of that crime.

a. Supporting facts:

Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where)*. *(If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

Petitioner was charged with robbery, but Petitioner Jury was instructed that if you found that Petitioner was in possession of recently stolen property, you could find him guilty of robbery. Prosecution never proved the Cigars were in fact stolen, or that Petitioner Knew the property to be stolen. And the Jury was instructed with CALJIC No. 2.15 This corroborating evidence need only be slight and need not be itself, be sufficient to warrant an inference of guilt. The instruction inadequately guided the jury's deliberations.

b. Supporting cases, rules, or other authority (optional):

*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

Yates v. Eatt 500 U.S. 391, 111 S.Ct. 1884) united states v. Chu F.2d 981) washington v. texas 388 U.S. 14, 87 S.Ct. 1920) Wardius v. Oregon 412 U.S. 474) Ulster County v. Allen 442 U.S. 157) united States v. warren 25 F.2d 294) U.S. v. Rubio-Villareal 967 F.2d 294)

enhancement." *(if you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)* 6

the Trial court Prejudically erred, and denied Petitioner Due Process of law by instructing the Jury with Standard CALJIC NO. 2.52 OF FLIGHT.

a. Supporting facts:

Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where)*. *(If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

Here the identity of the person who fled from the Police was the most hotly contested issue at trial) CALJIC NO. 2.15, in it's standard from as given here, was an erroneous instruction in that it did not inform the Jury, that before they could infer guilt-or Consciousness of guilt from flight, they must first determine whether or not Petitioner was one of the suspects who fled from the police. Are the one who dropped the I.D. card.) And there was no proof that Petitioner was in the getaway car, OR the one who dropped the I.D. Card)

b. Supporting cases, rules, or other authority (optional):

*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

Yates v. Evatt 500 U.S. 391, 111 S.Ct 1884) Strickland v. Washington 466 U.S. 668, 104 S.Ct. 2052) In Re Winship 397 U.S. 359, 90 S.Ct. 1068. Woodward v. Sargent 806 F.2d 153, 157) Wong v. 371 U.S. 471, 83 S.Ct 407) Henry 361 U.S. 98, 80 S.Ct 168) Draper v. United States 358 U.S. 307, 79 S.Ct 329)

**23.** Do you have any petition or appeal **now pending** in any court, either state or federal, pertaining to the judgment under attack?
☐ Yes ☒ No

**24.** If your answer to #23 is "Yes," give the following information:

(a) Name of Court: ______

(b) Case Number: ______

(c) Date action filed: ______

(d) Nature of proceeding: ______

(e) Grounds raised: ______

(f) Did you receive an evidentiary hearing on your petition, application or motion?
☐ Yes ☒ No

**25.** Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(a) At preliminary hearing: Celia Torres

(b) At arraignment and plea: celia torres

(c) At trial: GREOGORY K. WAITMAN
300 East State Street Suite 673 Rediand CA 92373

(d) At sentencing: GREOGORY K, WAITMAN
same as Above

(e) On appeal: SHARON M. JONES

(f) In any post-conviction proceeding: SHARON M. JONES
P.O. Box 1663 VENTURA, CA 93002

(g) On appeal from any adverse ruling in a post-conviction proceeding: ______

26. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?

☒ Yes ☐ No

27. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?

☐ Yes ☒ No

(a) If so, give name and location of court that imposed sentence to be served in the future: ______

(b) Give date and length of the future sentence: ______

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?

☒ Yes ☐ No

28. Date you are mailing (or handing to a correctional officer) this Petition to this court: 3/27/08

Wherefore, Petitioner prays that the Court grant Petitioner relief to which he may be entitled in this proceeding.

______

SIGNATURE OF ATTORNEY (IF ANY)

I declare under penalty of perjury that the foregoing is true and correct. Executed on

3/27/08 (DATE)

[signature] SIGNATURE OF PETITIONER

TABLE OF CONTENTS

PETITION FOR WRIT OF HABEAS CORPUS

Ground1: Petitioner's Right to Effective Assistance of counsel was violated when Defense counsel Failed To object to Hearsay Statements...

a. Supporting Facts...

b. Supporting Authority...

Ground2: The Evidence was insufficient to support Petitioner's convictions in counts 1 And 2.

c. supporting facts...

d. supporting Authority...

Ground: 3: Petitioner's right to Effective Assistance of Counsel was violated when Defense Counsel failed to investigate The facts of the case...

E. supporting facts...

F. supporting Authority...

Ground4: Petitioner's Sixth Amendment Right two Jury Trial...

G. supporting facts...

H. supporting Authority...

Ground: 5: The trial Court prejudicially Errored and Denied Petitioner Due Process of Law...

I. Supporting facts...

J. Supporting Authority...

Ground: 6: The Trial court prejudicially Errored And Denied Petitioner Due Process of Law...

K. Supporting facts...

L. supporting Authority...

# TABLE OF AUTHORITIES

## FEDERAL CASES (PAGES)

Adams v. U.S. ex rel. Mccann 317 u.s. 269, 63 S.Ct 236) 14.33.

Apprendi v. new jersey 120 S.ct 234) 44.

Barnes v. 412 u.s. 837, 93 S. ct 2357

Berger v. califoronia 393 u.s. 1038, S.ct 540) 13.

Bank v. Reynolds 54 F.3d 1508, 1515) 29.33.

Bollenebanch v. 326 u.s. 607) 42.

Blakely v. Washington 124 S.Ct 2531) 36.44.

Borum v. united states 380 F. 2d 595) 19.20.21.25.

Bain v. 123 u.s. 1) 33.

Cunningham v. California No.05-655) 35.36.40.44.

Chapman v. California 386 u.s. 18) 41.44.

Crawford v. United States 124 S.Ct 1354) 1.2.3.4.5.

Chamber v. Mississippi 410 u.s. 284) 6.13.

Douglas v. Albama 380 u.s. 415) 9.

Dutton v. Evans 400 u.s. 87) 13.

Delgado v. lewis 223 F.3d 976) 29.33.

Draper v. 358 u.s. 307) 65.

Fletcher v. 118 u.s. App. D.C. 137) 12.

Ford v. 872 F 2d 1233 united states) 32

Grenn v. california 399 u.s. 149) 10.

Henry v. 361 u.s. 98) 65

Heit v. 365 u.s. F.2d 504) 21.

In RE Winship v. 397 u.s. 358) 27.32.63.65.

Jackson v. virginia 443 u.s. 99) 5.18.26.

Jackson v. Denno 378 u.s. 368)

Kirby v. 174 u.s. 47) 12.

Kentucky v. Stincer 482 u.s. 730) 15.

Maloney v. united states 262 F.2d 535) 10.11.

Mancusi v. Stubb 408 u.s. 209) 15.

Mike v. Borg 947 F. 2d 353) 21.

Mason v.

Mattox v. 156 u.s. 237) 9.10.

Motes v. 178 u.s. 458) 12.

Namet v. 373 u.s. 179) 12.

Neder v. 527 u.s. 18)

Ohio v. Roberts 448 u.s. 56

Pointer v. Texas 380 u.s. 409) 6.14.

Powell v. Alabama 287 u.s. 68-69) 14.33.

Russell v. 369 u.s. 749)

Rose v. Clark 478 u.s. 570) 41.

Rubio-Villareal v. united states 967 F.2d 294) 48.52.

Sullivan v. louisiana 508 u.s. 275 38.42.44.

Schundeman v. Wallenstin 97 F.2d 313) 52.

Stirone v. 361 u.s. 212) 33.

Strickland v. Washington 466 u.s. 668) 5.8.13.29.30.31.33.34.63.

Slochower v. Board of higher education 350 u.s. 551) 5.10.

Spinner v. E.G. 180 F 3d. 514)

united states v. Young) 31.

united states v. chn) 53.

ulster County court v. Allen 442 u.s. 140) 46.52.

Washington v. texas 388 u.s. 14, 87 S. Ct. 1920) 54.

Woodward v. Sargent 806. F2d 153) 34.63.

Wong v. united states 371 u.s. 471, 83 S. Ct. 407) 64.65.

Wardius v. oregon 412 u.s. 470, 93 S. ct 2208) 54.55.

warren v. united states 25 F.3d 890) 48.50.52.

Yates v. United States 500 u.s. 391, 400) 41.42.52.62.

STATE CASE

People v. Andrews 49 Cal. 3d 200, 211) 21, 23,

People v. Andrews

People v. Bean supra 46 Cal. 3d, pp. 930-931) 22, 24.

People v. Figueroa supra 2 Cal. App 4th p. 1586) 23, 24,

People v. Preciad 233 Cal App. 3d 1244, 1246) 21, 23, 24.

People v. Sengpadychith 2001) 26 Cal 4th 316) 38.

People v. Scott 91 Cal. App 4th 1197 (2001) 38.

People v. Barnes 42 Cal. 3d 284) 18.

People v. Hernandez 47 Cal. 3d 315) 18.

DOCKETED CASES

STATE STATUTES (PAGES)

Rules of court 4.406. 37.

Rules of court 4.425. 37. 40.

Penal code Section 669. 37. 40.

Rules of court 4.425 (B) (iii) 37. 40.

DOCKETED CASES

Cunningham v. California. No. 05-655. 35. 36. 40. 44.

Miscellanous

Charles R. Nesson, Reasonable Doubt and Permissive Inferences: The value of Complexity (1979) 92 Harv. L. Rev. 1187, 1192.... 49.

Verification...

EXHiBits B.D.E.F.

Certificate of service By Mail

Motion And Delaration in support of Appointment of counsel

SUPPORTING FACTS

# INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Trial Counsel was in violation of Petitioner's Right to Effective assistance of Counsel, as guaranteed by the united states constitution, and fifth and Fourteenth and Sixth amendments, trial counsel failed to locate and interview witnesses, and failed to introduce objection on out of court hearsay statements. Trial counsel was defect for failure to object to highly prejudice hearsay statements, that was being used by the prosecution, as being sufficiently reliable bearing particularized guarantees of the trustworthiness of the statement. By trial counsels failure to object to this out of court statement, and by doing so, counsel would have allowed the court to consider the evidence, and allowing the court to evaluat in light of the totality of the circumstance, with a court considering "only those [circums-tances], that surround the making of the statement, and that render the declarnt particularly worthy of the belief. (See) supporting Authority (One A) Ohio v. Roberts. Regardless of whether such statements are deemed reliable by courts, Defense Counsels job is to seek exclution of evidence that is highly favorable to the

Prosecution and highly prejudice to the defense. See Supporting Authority. (One A)

Had counsels admission not been defected, it is highly likely that the out of court hearsay statement, would have been evaluated in light of the totality of the circumstances. And the court considering "only those [circumstances] that surround the making of the statement, and that render the declarant particulary worthy of the belief.

Defense counsels actions was highly prejudice to petitioner's out come. Because defense failure to object to the out of court hearsay statement, allowed testimony material evidence to be used against petitioner. Defense counsel made no attempts to seek exclution of the evidence, are to make objection to this highly prejudicial testimony favorable to the prosecution. And because of this the defense counsel arbitirily limited the petitioner ability to secure the accused has the right to confront and cross examine witnesses against him. And because of counsels failure to make an objection in trial court, which his objection was the purpase of establishing or proving some facts. See) Supporting Authority (one A(2)

And regardless of whether such would have been consider reliable, counsel job is to object to evidence that is highly prejudicial to petitioner and highly favorable to the prosecution. See)(Supporting)(Authority One A) And because of counsels prejudicial actions toward petitioners defense, the state was able to use the statements that violated petitioner right to confrontation clause, because where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is confrontation. (See) supporting Authority (one A) (2) Trial counsel new that petitioner never had a pretrial examination on the suppose to be witness statement and no parliamentary testment "Nothing can be more essential than the cross examining [of] witnesses, and generally before the triers of the facts in question.... And because of defense counsels failure to make an objection to the highly prejudicial statement. And because of this, defense counsel had a prejudicial affect an petitioners procedure. And in light of the necessity for hearsay evidence of the type here involved against petitioner, that there would be a danger that a jury will give it undue credit, might reasonably conclude that admission of the evidence would increase the likelihood

OF Just determinations of Truth. Also be OF Counsels prejudicial affect, his involvement put restrictions on the Petitioners right to cross examination, and his wholesale denial of that right for Petitioner. IN the circumstances of this case, Petitioners inability to cross examine the confession of the witness plainly denied Petitioner the right to cross examine the suppose to be witness, that had alleged that she was in possession of a wallet belonging to the witness Eddie (SEE) EXHIBIT B1) And that she called the san Bernardino Police, and said she was in possession of a wallet belonging to the witness, Eddie, and the witness eddie gave statements that she said she was moving out of state, and that she called the police, and than the police come and take a report about the statements he made in court, that Gibsons girlfriend was in possession of his wallet and that he thought it was Gibsons girlfriend, because the police said they new him, and that he was in custody, and new what he looked like. And that they have take the statements of his girlfriend. These statements becoming highly crucial linking them to the co-defendant and the suppose to be girlfriend, with no proof surrounding the out of court hearsay statement, and the making of Eddies statement, may have well been the equivalent

in the Jury's Mind of the testimony. And the witness statements created a situation in which the jury improperly infer both that the statement had been made and that it was true. SEE) Supporting Authority (1A 2) Slochower v. board of Higher Education. And since girlfriend was not a witness the inference from his statement made to the jury. And than used as a arraignment in his closing arraignments to the jury, in witch the prosecution used to infer Petitioner's guilty. And this testimony enhanced the danger that the jury would use this inference to conviced the Petitioner of robbery. (SEE) (EXHIBIT B1) And therefore such that " inferences from the witness added critical weight to the Prosecution's case, in a form not subject to cross-examination, and thus unfairly prejdiced the Petitioner. SEE) Supporting Authority (2 A) Namet v. United States. And because the witness confession of the out of court statement, and the prosecution evidence tended to show that the co-defendant was indeeld involved in the robbery. And what happened in Petitioners case here, violated the Petitioners right to a effetive assistance of counsel See) Supporting Authority (2 A) Stickland v. washington. And Petitioner was deprived of his liberty without due process of law in violation of the Fourteenth Amendment. (SEE) Supporting Authority (2 B) Jackson v.

Denno. Russell V. U.S.) Chambers. V Miss(PPI),

Pointer V. Texas ..

And the Confortation clause, proving the accused has right to confront, and cross examine witness against him. Applies not only to out of court statements introduced at trial, regardless of admissibility of statements under law of evidence. U.S.C.A. Cont. Amend. 6.

And in Ohio V. Roberts, the defendant's right to confront witnesses against him had been violanted when the Preliminary hearing testimony of a witness, who did not appear at defendant's trial was admitted in to evidence. This testimony had not been tested by questioning the equivalent of cross examination, and where circumstances established that witness was unavailable, in the constitutional sense to appear at trial.

And here in Petitioners case, there was no transcripts of an interview ever taken place, And counsel still permited the hearsay statement, to be used against Petitioner. And counsel made no Att to Make an objection, to the use of the hearsay statment. And counsel new that such evidence being offerd, would be highly prejudice to Petitioners case. And that there be established Proof, that witness Eddie had Comunicated with Co-defendant Gilsons suppose to be girlfriend. And

that the witness had in fact tried to ... a police officer. And the introduction of the hearsay statement to the jury, violated Petitioner's sixth Amendment right to effective assistance of counsel. And it is imposes on counsel to make professional decisions, and to obtained witnesses in his favor, and to have the assistance of counsel for his defence". And here the right to counsel plays a crucial role in the adversarial system embodied in the sixth amendment, since access to counsel's skill and knowledge is necessary to accord defendants the "ample opportunity to meet the case of the prosecution" to which he is entitled. (see) supporting Authority (36) And counsel failling to render "adequate legal assistance." And it shows that counsel's conduct was unprofessional. Here there was no prior testimony of the co-defendants girlfriend, there bore no sufficient "indicia of reliability." And here there was no cross examination, as a matter of form, and comported with the principal purpose of cross examination, by counsel challenging the witness suppose to be statements made by a nother witness Eddie. THAT the co-defendants girlfriend, made those statements, and this playing a crucial role in petitioner trial, and his inadequate assistance prejudice the petitioner. And his failed att to challenged the Hearsay statement can not be considered a sound trial strategy. And this was not

the result of reasonable professional judgment. here Counsel should have made an timely objection to significant, arguably erroneous evidence at trial. on the basis of a cold record, it may be impossible for a reviewing court confidently to ascertain how the government's evidence and arguments would have stood up against beuttal and cross-Examination by a shrewd, well-prepared lawyer. And counsel should have objected to this Heary say statement, and to the admission statement, and it's conduct it may have on a jury that has be told the co-defendant and the Petitioner were the robbyers in most of the robbiers. And has said Petitioner was one of the Robbyers. And here counsel made no sufficient objection to this highly prejudice evidence being used against petitioner. And if counsel had been an professional competent assistance, he might well have decided to present material and object to the material of the hearsay statement being used against Petitioner by the prosecution in this trial.

And Defense Counsels was highly prejudice to petitioners defense, and this was ineffective assistance of counsel.

And the conviction must be reversed.

STRICKland v. Washington 466 U.S. 668, 80 L.Ed.2d 674

This is the question presented is whether this procedure complied with the petitioners sixth amendments guarantee that, "[i]n all criminal prosecutions, the accused shall enjoy the right... to be confronted with the witness against him. If one would read this language literally, it would require, on objection, the exclusion of any statement made by a declarant not present at trial Mattox v. united States 156 U.S. 237, 243, 15 S.ct. 337, 340 39 L.Ed 409 (1895) The court has emphasized that the confrontation clause reflects a preference for face-to face confrontion at trial, and that "a primary interest secured by [the provision] is the right of cross-examination". Douglas v. Alabama, 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L Ed.2d 934 (1965) supreme court held that transcript was inadmissible because the daughter had not been actually cross examined at the preliminary hearing and was absent at trial, the admission of the transcript thus having violated Respondent's confrontation right. 443 U.S. 56 ohio v. Roberts 100 S.Ct. 2531 (1980) 448 U.S. 56, 65 L.Ed2d 597 pp. 2534.

And Counsel's omission was prejudicial and resulted in ineffective assistance of counsel Requiring Reversal.

A ONE

Supporting Authority

The Petitioner Must not be denied the opportunity to challenge his accusers in a direct encounter before the trier of fact. California v. Green 399 U.S. 149, 156-158, 90 S.Ct. 1930, 1934-1935, 26 L.Ed.2d 489 (1970) The constitutional guarantee is the accused's right to compel the witness "to stand and face to face with the jury in order that they may look at him or her, and judge by his demeanor upon the stand, and the manner in which he gives his testimony whether he or she is worthy of the belief. Mattox v. United States 156 U.S. 237, 242-243, 15 S.Ct. 337, 339, 39 L.Ed. 409 (1895) California v. Green 399 U.S. 149, 156-158, 90 S.Ct. 1930, 1934-1935, 26 L.Ed 2d 489 (1970)

Where Testimonial statements are at issue, only indicium of reliability sufficient to satisfy constitutional demands is the one constitutional actually prescribes, i.e., confrontation, abrogating Ohio v. Roberts 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 U.S.C.A. Const. Amend 6.

The testimony of Eddie May have been the equivalent in the jury's mind of his testimony, the reliance upon that statement created a situation in which the jury might improperly infer both that statement had been made and that it was true. Slochower v. Board of Higher Education, 350 U.S. 551, 557, 558, 76 S.Ct. 637, 640-641, 100 L.Ed 692.) United States v. Maloney 262 F.2d 535, 537 (C.A. 2d Cir 1959)

this denial of the essential right secured by the confrontation clause. Indeed, their testimony enhanced the danger that the jury would treat the Solicitor's questioning of loyd's refusal to answer as proving the truth of loyd's alleged confession, but since their evidence tended to show only that loyd made the confession, cross-examination of them as to its genuineness could not sustitute for cross examination of loyd to test the truth of the statement itself. Motes v. united states, 178 U.S. 458, 20 S.Ct. 993, 44 L.Ed. 1150, Kirby v. united states, 174 U.S. 47, 19 S.Ct. 574, 43 L.Ed 890.

And therefore such that "inferences from a hearsay statement added critical weight to the prosecution's case in a form not subject to cross-examination, and thus unfairly prejudiced the defendant." Namet v. united states 373 U.S. 179, 187, 83 S.Ct. 1151, 1155, 10 L.Ed 2d 287. Fletcher v. united states, 118 U.S. App.D.C. 137, 332. F.2d 724 (1964).

And judge by counsels demeador his actions was deficient, and his performance was highly prejudiced, and counsel errors were so serious as to deprive petitioner's a fair trial, and of effective assitance

of counsel, as guaranteed by the Sixth amendment. Strickland v. Washington 466 U.S. 668, 80 L.Ed.2d 674. And the circumstances, identified by counsels acts and omissions were outside the wide range of professional competent assistance. counsel failed to bear such skills, and knowledge as well render the trial a reliable adversarial testing process. U.S.C.A. Const. Amend. 6. These means of counsel testing the accuracy, so important that the absence of the proper confrontation at trial, "calls into question the ultimate "integrity of the fact-finding process." Chambers v. Mississippi 410 U.S. 284, 295, 93 S.Ct. 1038, 1046, 35 L.Ed.2d 297 (1973) Berger v. California, 393 U.S. 314, 315, 89 S.Ct. 540, 541, 21 L.Ed.2d 508 (1969).

And here it is a reasonable probability," that counsel undermine the confidence in petitioners proceeding. and the outcome would have been different, but for counsels unprofessional errors. And had counsel objected to the hearsay statement, it is a reasonable probability that the hearsay statement would have been inadmissble. with the jury not being able to make a erroneous inference, from an hearsay statement, that beared no adequate indicia of reliability, with no way to test the truth of such statement made out side the court.

And a likelihood assuming from fact [has] a satisfatory basis for evaluating the truth of the statement. And that the jury would have not increase the likelihood of a just determination of the truth. And would have not allowed the prosecution to make closing arraignments to the jury, which prejured the testimony knowingly used by prosecution to obtain conviction, by the jury making a improper inference from the statement. And because of, And because of defense counsel deficient performance, and prejudiceds effect. By denieing petitioner the right to meet the case of the prosecution to which he is entitled. Adams v. united States ex rel. McCann, 317 U.S. 269, 275, 276, 63 S.Ct. 236, 240, 87 L.Ed 268 (1942) Powell v. Alabama, supra, 287 U.S. at 68-69, 53 S.Ct. 63-64.

And counsel's errors were so serious that "counsel" guaranteed to the defendant by the sixth amendment. And his deficient performance prejudiced the petitioner. And influence the outcome of the proceeding. counsel errors, the jury would have found petitioner not guilty. And Petitioner was deprived of his liberty without due process of law in violation of his Fourteenth Amendment right to due process. Pointer v. Texas 380 U.S. P. 409, 85 S. Ct. P 1071.

And considering reliability factors beyond prior opportunity for cross-examination, when hear-say statement at issue was not testimonial. Dutton v. Evans, 400 U.S. at 87-89, 91 S.ct. 210.

The later cases conform to Mattox's holding that prior trial or preliminary hearing testimony is admissible only if the petitioner, had an adequate opportunity to cross-examine. Mancusi v. Stubbs 408 U.S. 204, 213-216, 92 S.ct. 2308, 33 L.Ed 2d 293 (1973) And testimonial ....... statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the petitioner has had a prior opportunity to cross examine. Ohio v. Roberts 448 U.S. 56, 65 L.Ed.2d 597.

Indeed, cross examination is a tool used to fleshout the truth, not an empty procedure. Kentucky, v. Stincer 482, U.S. 730, 737, 107 S.ct. 2658, 96 L.Ed 2d. 631 (1997)

Due process commands that no man shall lose his liberty unless the government has borne the burden of convincing the fact-finder of his guilt" to this end, the reasonable doubt standard is indispensable, for it "impress on the trier of fact the necessity of reaching a subjective state of ceritude of the facts in issue". Prosecution must convince trier of all essential elements of guilt. IN RE Winship 397 U.S. 358.

And counsel was ineffective and his tactical decisions render the trial unreliable And highly deficient and prejudiced to the Proceeding of Petitioner's defense.

And the conviction of Petitioner must be Reversed. Strickland v. Washington 466 U.S. 668, 80 L.Ed.2d 674.

# ARGUMENT

# TWO

The Evidence was INSFFicient To support Petitioner's Convictions IN Counts 1 And 2, The "JUG $ JIGGER" ROBBERies, THus DEPRIVING Petitioner of His FEDERAL And STATE Constitutional Rights to Due PROCESS OF LAW.

# Supporting Facts

A single latent fingerprint lefted from a box of cigars found on the floor after the robbery of the Jug & Jigger liquor Store was found to Match that of Petitioner. See Exhibit C1.

Apart from this Piece of Circumstantial evidence, there was no other evidence to connect Petitioner to this offense. Neither of the Witnesses to the offense identified Petitioner, nor was there any other circumstantial evidence linking petitioner to this robbery which occurred three days prior to the robberies, and Police pursuit on October 20, 2003. The Fingerint was found on a box of cigars which had been on a cigar display Shelf in the liquor store for an undermine Period of time, and which was fully accessible to customers, or any Members of the Public who entered the store Prior to the date of the offense. See Exhibit C2.

It is respectfully Submitted that this single item of circumstantial evidence was, for reasons set forth below, insufficient to sustain the Conviction in Counts one and two.

1. General Principles Governing review of Insufficiency OF the Evidence claim on appeal.

The proper test to determine a claim of insufficiency of the evidence in a criminal case is whether, on the entire record, a rational trier of fact could find a defendant guilty beyond a reasonable doubt. the court explain that whenever the evidentiary support for a conviction face a challenge on appeal, the court must review the whole record in light most favorable to the judgment below to determine, whether it disclose substantial evidence, such that a reasonable trier of fact, could find the defendant guilty beyond a reasonable doubt. Applying this test to the present case there was no substantial evidence to support the conviction. See) supporting Authority D1) Jackson v. Virginia. The appellate court must judge whether, the evidence of each of the essential elements of the offense, of which defendant stands convicted is substantial and of solid value, see ) People v. Barnes People v. Hernandez.

The above principles preclude this court from upholding a conviction, merely because there is any evidence, no matter how weak to support the elements of the prosecution's case. Rather, "implicit in... the petitioner courts duty to determine the legal sufficiency [of the evidence to sustain a verdict is....

The nigth circuit court of appeals held that when a criminal case is premised solely upon the petitioner's fingerprints left at the scene of a crime. The prosecution must present evidence, sufficient to permit the jury to conclude, that the objects on which the fingerprints appeared, were inaccessible to petitioner prior to the time of the commission of the crime. A similar conclusion was reached by the united states court of appeals for the district of columbia in the case of. Borum U.S. 380 F.2d 595. SEE Supporting Authority D1 And petitioner is aware that the federal courts is controlling, it is urged that the federal cases provide compelling and persuasive authority which supports petitioner's claim that the evidence was insufficient to sustain his convictions on counts 1 and 2. And reversal is required.

The words of the united states court of appeals in Borum v. united states.

Fingerprint evidence is very reliable. It is a kind of evidence courts should encourage police to obtain. But to allow this conviction to stand would be to hold that anyone who touches anything, which is found later at the scene of a crime may be convicted, provided he was within a mile and a half of the scene when the crime may have been committed. We decline to adopt such a rule;" (Id, At P. 601)

IN Mikes v. Borg the ninth circuit court of appeals held that when a criminal case is premised solely upon the defendant's fingerprints left at the scene of a crime, the prosecution must present evidence sufficient to permit the jury to conclude that the objects on which the fingerprints appeared were inaccessible to the defendant prior to the time of the commission of the crime. A similar conclusion was reached by the united states court of appeals for the District of columbia in the cases of Borum v. united states, and Heit v. united states. The courts in califorcia, on the other hand, have held that fingerprint evidence may sufficient circumstantial evidence to connect a defendant with the commission of a crime and to uphold a conviction on appeal. People v. Bean (1988) 46 Cal.3d 913, 932; People v. Andrews (1989 49 Cal.3d 200, 211; People v. Figueroa (1992) 2 Cal. App. 4th 1584; People v. Preciad (1991) 233 Cal. App. 3d 1244, 1246.) Although these cases appear to stand for the proposition that fingerprint evidence, alone, is sufficient to sustain a conviction on appeal, a closer look reveals that other evidence, in addition to the fingerprint evidence, was presented in these cases to support the convictions. Additionally, the prosecution in these cases also presented evidence that the defendants did not have access to the areas

[illegible] the fingerprint evidence was found prior to the time of the offenses and, thus, could have only left their fingerprint while committing the offenses.

In Bean, for instance, the defendant was charged with two murders: the Schatz murder and the Fox murder. Schatz was killed at late at night by a person or persons who entered her mobile home through a kitchen window. Shoe prints which bore a "strong indication" that they were left by shoes owned by the defendant and his brother were found in the flower bed under the kitchen counter were matched to those of the defendant. In the early hours the following morning the defendant told friends that he may have killed a woman, that he beat her, that he had taken property including a TV and 30.06 Rifle, the same items which had been stolen from the Schatz mobile home. (People v. Bean, supra 46 Cal.3d, at pp. 930-931.)

In the Fox murder, a pair of sunglasses which bore a fingerprint matching the defendant's, were found inches from the victim's body. The defendant admitted that he owned a pair

of sunglasses identical to those found near the body. Additionally, the defendant was seen observing the victim's home from a nearby in the weeks preceding the murder. (Id. at pp. 931-932.) The Supreme court held that the totality of the evidence was sufficient to uphold Bean's conviction for murders. (Id., at pp. 926-934)

In People v. Andrews, supra, a murder conviction was upheld where fingerprints found inside the home of the murdered victim were corroborated by both custodial and non-custodial confessions and admissions by the defendant. (People v. Andrews, supra, the court upheld a burglary conviction based in large part on finger prints found on a discarded piece of glass from a broken window where the defendant, who was a distant relative, and that although he had been in her home on three to five prior occasions, she was present on each occasion and she had never observed him in the area of the kitchen near the window. Furthermore, she stated that the window was washed every other weekend. (People v. Figueroa, supra, 2 Cal. App. 4th, at p 1586.) Similarly, in People v. Preciado, supra, the defendant's fingerprint was found on a wristwatch box inside a burgled apartment. The owner did not know

the defendant, and he [illegible] left her home. (People v. Preciado, supra, 233 Cal. App. pp. 1246-1247.)

Thus, in each of these cases it is apparent that the convictions were not based entirely on uncorroborated finger print evidence and, in at least Bean, Preciado, and Figueroa, there was evidence that the defendants did not have prior access to the areas where the finger print evidence was found.

In petitioner's case, the fingerprint was found not inside a private home as were the fingerprints in Bean, Figueroa, Preciado, and Andrews. Rather, it was found on a package of cigars, it is also true that customers, which could have in cluded petitioner, handled the cigars prior to the crime. Where there is absolutely no way to prode when or how a fingerprint could have been left on an item which is available to the general public, that finger-print, alone, is not sufficient to uphold a conviction. Petitioner's convictions in counts 1 and 2 must be reversed.

SUPPORTING AUTHORITY

D1

Supporting Authority

In HIET The Court held that evidence was insufficient to Sustain conviction where only evidence against defendant was not place in vicinity of automobile window, which was identified as his, he was not shown to have been in possession of any of the stolen property at any time, none of the stolen property was ever recovered, and there was no testimony as to probable age of the fingerprint. Hiet v. United States 365 F.2d 504 (1966) IN BORUM United States 380 F.2d 595 (1967) The Government's evidence shows that borum touched the one or two jars in question, But there is no Evidence, Either direct or circumstantial, which indicates that he touched the jars in the course of a house break in on June 2, 1966. Indeed, one of the Government's own witnesses testified, that boruns Fingerprints could have been on the jars "For a period of Year's, the government introduced no evidence which could account for, or even Suggest an inference about, the custody or location of the jars during that period. The Government's expert testified, that petitioner's Fingerprints in question could have been on the cigar box for weeks Months or Years. See EXHIBIT (E1) (E2) (E3)

IN Jackson V. Virginia 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.

The court explain that whenever the evidentiary support for a conviction face a challenge on appeal, the court must revie the whole record in light most favorable to the judgment below, to determine whether it disclose substantial evidence, such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. Applying this test to the present case there was no substantial evidence to support the conviction. The court held that "the critical inquiry on review of the sufficiency of evidence to support a criminal conviction... [is] to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." 443 U.S. At P. 318 Explaining this standard the court said that "this inquiry does not require a court to 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.' [Citation omitted.] Insted the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. 443 U.S 313.) The evidence was insufficient to support Petitioner guilt in count 1 and 2 and judgment must be reversed.

Trial Counsel was ineffective for failing two invesigate the Prosecdor's First AmendMent information and Petitioner Counsel denied Petitioner OF his sixth amendment right to Counsel and denied Petitioner of his 14th AmendMent right two due process, And 6th Amendment right Effective assistance of Counsel. APPELLEATE Cousel was Effective Four Failure to Raise Meritorious issues on Appeal, depriving Petitioner of a Meritorious appeal.

Trial counsel was ineffective and had a effective on Petitioner's Proceeding (1) Counsel faild to investigate the factual basis for his client's defense. And it was further alleged in the First Amended Information, that petitioner was charged with robbery by force and fear, and counsel made no objection to the court's instructional error, allowing the jury to convict Petitioner on a on charged element, and allowed the petitioner's court to permit petitioner to be tried on changes that were not charged in the First Amended information against him. See) supporting Authority (H1) (H2) Stirone v. united States. And this making counsel's performance defective. (2) Due process clause requires the government to Prove beyond a reasonable doubt every element of the crime charged; And that Petitioner be informed of the changes in order that Petitioner have a reasonable opportunity to prepare and present a defense. see) supporting (H2) Authority IN RE winship) And the due process clause forbids the court from altering the crime charged through jury instructions, when instructions broaden base for conviction. (See) supporting Authority H(2) u.s. v. Ford) And here A " constructive amendment " occured, when the jury instructions broaden the scope of the charging document by permitting conviction for an uncharged offense. And counsel was prejudicial to petitioner requires reversal of judgment.

27, P.

APPELLATE Counsel and trial Counsel deprived Petitioner of his Federal contitutional sixth Amendment right to effective assistance appellate and trial counsel. APPELLATE Counsel faild to bring up Meritorious issues on Appeal to be taken up with the Court of appeals. Appellate counsel said that she could not bring up issues which i asked her to raise on appeal, for trial counsel was Ineffective for failure to investigate the factual basis for his client's defense, and that his tactical decisions demonstrate incompetence of counsel. And That counsel had faild to investigate the accusatory Pleading or two objected to the trial court's given of CALJIC. 9.41 About Me being charged with robbery by force and fear, but allowed the judge to instructed the jury that they could find Me guilty of Robbery by force or fear, when the defendant was not charged with force or fear. And that this Permitted the jury to convict the Petitioner upon a factual basis that effectively Modifies an essential element of the offense charged. See EXHIBIT F1) And Appellate counsel's job is to research the record and to applie the law to any possible appellate issues, and to draft an opening brief with Meritorious issues. And if counsel has faild to do so, counsel can not be acting in a manner to be expected of reasonably competent attorney acting as a diligent advocates. And counsel

28. P.

Withdrawal her self from a potentially meritorious defense. Appellate counsel's failure to claim ineffective assistance resulting in prejudicial result at the trial level was ineffective assistance because defendant would have likely prevailed had issue been raised. SEE) Supporting Authority G.1) Mason V Hanks, and counsel's failure to raise obvious and significant issues was ineffective assistance, because it was without legitimate strategic purpose (See) Supporting Authority G.1) Carter V. Bowersox) Appellate counsel's actions was a deliberate failure to raise potentially meritorious issue on appeal, and counsel's failure to perform these obligations meritorious defense, and because of this petitioner has not had the assistance to which he is entitled (See) Supporting Authority H.1) Strickland V. Washington. And because counsel faild to raise this issue counsel has unfairly penalize[d] petitioner to a meritorious issue making counsel's performance defective, (2) counsel's failure to raise any arguable issue in appellate brief, and her failure to discover instructional error and raise that issue was prejudice to petitioner was ineffective assistance, (See) Supporting authority (H.1) Bank V. Reynolds) Delgado V. Lewis Strickland V. Washington.) counsel was ineffective assistance, And the instructional error was prejudicial to petitioner and requires reversal of the judgment.

Here the Petitioner argues as present in these case the government hampered his ability to perpare an adequate defense at trial due to trial counsel's ineffectiveness, trial courts impermissible amendment of robbery charged through jury instructions. And this deprived petitioner of his sixth amendment right to effective assistance of counsel, and two have counsel present a adequate defense. In addition to counsel's failure to make a substantial factual inquiry at trial, and counsel failure to make proper objections to inadmissible evidence. "An important part of defense counsel's job is to seek exclusion of evidence that is critical to the prosecution's case or that is highly prejudicial. SEE) supporting Authority #2) Strickland v. Washington. And because of this counsel's render ineffective assistance of trial counsel and counsel's omissions was prejudicial and resulted in ineffective assistance of trial counsel and requiring reversal of petitioner's conviction.

And counsel's actions was prejudicial to Petitioner's defense. The sixth Amendment imposes on counsel a duty to invesistgate, because reasonably effectile assistance must be based on professional decisions, and informed legal choices can be made only after investigation. See Strickland v. Washington 466 U.S. 668, 80 L.Ed.2d 674 pp. 2060)

Government violates the right to effective assistance when it interferes in certain ways, with the ability of counsel to make independent decisions about how to conduct the defense. (See) E.G. Geders v. united states 425 U.S. 80, 96 S. Ct. 1330, 47 L.Ed.2d 592 (1976) The High Court has recognized that the sixth Amendment right to counsel exists, and is needed, in order to protect the fundamental right to a fair trial. The constitution guarantees a fair trial through the Due Process clauses, but it defines the basic elements of a fair trial largely through the several provisions of the sixth Amendment, including the counsel clause; In such case, reversal is automic, because the Petitioner may have been convicted on a ground not charged in the "Pleading" united state v. Young, 730-221-222 (5th Cir (1984) were the theory the jury convicted for these reasons stated above Petitione conviction in the interest of justice, must be reversed and is supported by the holding in the united states supreme court in winship supra 31 p.

offense not charged in the First amendment Information. IN RE Winship 397 U.S. 358 (1970) The Due Process clause requires the government to prove beyond a reasonable doubt every element of a crime charged. And that Petitioner be informed of the charges in order that Petitioner have a reasonable opportunity to prepare and present a defense. In the united States v. Ford 872 F2d 1233 (6th cir (1989) The Due Process clause forbids the court from altering the crime charged through jury instruction's, when instruction's broaden base for conviction. Petitioner argues he was deprived of his substatial rights, to due process, To only be tried on robbery charges as described in the accusatory Pleading as being committed with "Force and Fear" Allowing the jury to find a verdict of guilty if the "crime was accomplished by means of force or fear by petitioner, the instruction was erroneous, in that it used the disjunctive "or" instead of the conjunctive "and between the words "force and "fear. And there is nothing in the record demonstrates adequate evidence from which the jury might have infered the existence of force and Fear", and found petitioner guilty by both force and Fear, since the court used the disjunctive "or" instead of the conjunctive "and. And here counsel was Prejudicial to Petitioner substatial right at trial to be tried only on those Charges alleged in the accustatory Pleadings. E.g. V. Spinnes 180 F3d 514, 515-516 (3th cir (1999)

Strickland v. Washington 466 U.S. 668, 692) Right to effective assistance of counsel impaired when defense counsel operates under conflict of interest because "counsel breaches the duty of loyalty, perhaps the basic of counsel's duties") Counsel's performance was deficient and second, that his deficient performance prejudiced defense so as to deprive the petitioner of a fair trial, and the right to reasonably competent attorney. The right to counsel plays a crucial role in the adversarial system embodied in the Sixth Amendment, since access to counsel's skill and knowledge is necessary to accord defendant's the "ample opportunity to meet the case of the prosecution" to which they are entitled. Adams v. United States ex rel. McCann, 317 U.S. 269, 275, 276, 63 S.Ct. 236, 240, 87 L.Ed. 268 (1942) see Powell v. Alabama. supra 287 U.S. at 68-69, 53 S.Ct. 63-64)

In Banks v. Reynolds 54 F.3d 1508, 1515-16 (10th Cir (1995) And Delgado v. Lewis 223 F.3d 976, 980-82 (9th Cir (2000) Appellate counsel failure to raise any arguable issue in appellate brief and counsel's failure to discover instructional error and raise that issue was prejudice to petitioner and making counsel's performance deficient. The bain case Ex Part-bain 121 U.S. 1 (1887) which has never been disapproved, stands for the rule that court cannot permit a petitioner to be tried on charges that are not made in the accusatory pleading against petitioner. Stirone v. United States 361 U.S. 212 (1960) Allowed impermissible burden shift and create a separate

397 U.S. 358 (1970)

And Strickland v. Washington 466 U.S. 668.

And that "there is a reasonabl probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Strickland v. Washington 466. U.S. 668, 693-694. 104 S.Ct. 2052, 2066.) And There is reasonable probability that the result would have been different had the jury been properly instructed. As the Eighth Circuit has concluded, there can be no tactical reason, for failing to request an instruction that can only benefit the defendant (Woodward v. Sargent (8th Cir (1986) 806. F.2d. 153, 157.

Trial counsel was ineffective for failing to object to jury instruction which were prejudicial and erroneous under the facts of this case. Strickland v. Washington 466 U.S. 668

The Instructional error was highly prejudicial to petitioner and requires reversal of the judgment.

IMPOSITION OF CONSECUTIVE SENTENCES ON ALL COUNTS CONSTITUTED AN ABUSE OF DISCRETION AND, FURTHEMORE, CONSTITUED A VIOLATION OF APPELLANT'S RIGHT TO JURY TRIAL UNDER THE SIXTH AMENDMENT AND CUNNINGHAM V. CALIFORNIA, BLAKEY V. WASHINGTON.

A. Introduction:

Petitioner was sentenced to consecutive terms of imprisonment for all counts, based on the factual finding that the offenses constituted separate acts. and/or threats of violence. Exhibit (I-1) RT 1074-1075.) The imposition of consecutive sentences, based on factual findings made by the trial court using a preponderance standard of proof, afoul of the decision in california v. Cunningham No. 05-6551, Blaken v. Washington (June 24, 2004) 124 S. Ct. 2531, 159 L. Ed. 2d 403 ("Cunningham"), ("Blakely") which held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. "Cunningham, Blakely, supra 124 S. ct. At p. 2536.) It is petitioner's contention that california's system for imposing consecutive determinate sentences is subject to the same constitutional infirmities identified in cunningham v. California, and blakely which applied to washington state, and cunningham v. california determinate sentencing law and, for this reason, the judgment must be reversed.

B. Cunningham, and Blakely applies to the imposition of consecutive sentences, as well as to aggravated terms.

The imposition of consecutive terms rest on factual findings made by the judge, not by a jury. In sentencing petitioner to consecutive terms, the court found, under the applicable rules of court, that the offenses constituted separate acts or threats of violence. This factual finding was never found true by a jury. under cunningham and blakely, the consecutive sentences imposed in petitioner's case violated his sixth Amendment right to jury trial in two respects: the factual findings supporting the consecutive terms were not found beyond a reasonable doubt. Cunningham v. California No. 05-6551 pp. 7) Blakely v. Washington, supra, 124 S. Ct. at 2538, 2539.) Penal code section 669 provides that when a defendant is convicted by two or more offenses, the judgment shall direct whether the terms of imprisonment shall run concurrently or consecutively, and further states, "upon the failure of the court to determine how the terms of imprisonment on the second or subsequent judgment shall run, the term of imprisonment on the second or subsequent judgment shall run concurrently." Thus, concurrent sentencing is "default" and consecutive sentencing is a enhancement.

Requiring a statement of reasons under California Rules of court rule 4.406. Rule 4.425, california rules of court, implement Penal code Section 669 by setting forth criteria affecting the decision to impose consecutive rather than concurrent sentences. Concurrent sentencing is the presumptive norm unless the sentenecing court finds the existence of facts under the criteria listed in Rule 4.425. These facts are not related to the jury's finding (or an admission in a plea) of the elements of the crime beyond a reasonable doubt. Indeed, the rule specifically provides that "a fact that is an element of the crime shall not be used to impose consecutive sentences." (Rule 4.425 (b)(iii), cal. Rules of court.) The criteria used by the trial court to impose the consecutive sentences in Petitioner's case were facts which went beyond those

IN Sullivan V. Louisiana (SEE) supporting Authority (I 1) The supreme court held that a constitutionally deficient reasonable-doubt instruction required reversal of conviction, without a harmless error analysis of Chapman v. California (SEE) supporting Authority (E1)

IN Sullivans logic applies with equal force to cunningham, and blakey error. Here, as in Sullivan, there being no jury finding of the aggravating circumstance beyond - a Reasonable - doubt, the question whether the same finding beyond a - reasonable doubt would have been absent the constitutional error is utterly meaningless.

It is true that the california supreme court in People v. Sengpadychith (2001) 26 cal.4th 316, considering Apprendi-type error, applied Chapman analysis. But Sengpadychith was trial error, People v. Scott (2001) 91 cal.App.4th 1197) are distinguishable in ways that do not render them vulnerable to Sullivan. Sengpadychith involved an omission of a discrete element of an enhancement (the primary activities element of an gang Enhancement, 186.22 (b) Rather than a complete failure to submit the entire matter to the jury. This the error in Sengpadychith was trial error, leading it's to a circumstance governed by Neder v. united states (See supporting Authority (I2)

Instructional error in omitting an element of the offense), in which chapman applies. Moreover, in Sengfoycritz, unlike here, there was no violation of petitioner's right to have the jury make the relevant finding beyond a reasonable doubt, as in Sullivan. Even if one were to apply chapman to the error in petitioner's case, the failure to allow a jury to determine the sentencing factors could not be found to be harmless beyond doubt. Preventing a jury from determineng a fact beyond a reason-able doubt cannot be found harmless under chapman if petitioner contested the fact and raised evedence suffielent to support a contray finding. (Neder v. united state (ct2) Here petitioner contested the aggravating factors and set forth mitigating factors in a pre-sentence sentencing Memorandum, statement mitigating of offense, and request to dismiss Enhancements (ct 155-173.)

Thus petitioner presented evidence sufficient to support a finding in his favor on the alleged sentencing factors, and the failure to present these factors to an jury could not be found to be harmless beyond a reasonable doubt.

Rule 4.25, California Rules of Court, implement Penal Code section 669 by setting forth criteria affecting the decision to impose consecutive rather than concurrent sentences. Concurrent sentencing is the presumptive norm unless the sentencing court finds the existence of facts under the criteria listed in rules 4.425. These facts are not related to the jury's findings (or an admission in a plea) of the elements of the crime beyond a reasonable doubt. Indeed, the rule specifically provides that "a fact that is an element of a crime shall not be used to impose consecutive sentences." (Rule 4.425 (b) (ii), Cal. Rules of Court.) The criteria used by the trial court to impose the consecutive sentences in petitioner's case were the facts which went beyond those proven beyond a reasonable doubt at trial. Therefore, consecutive sentencing in this case violates petitioner's Sixth Amendment right to jury trial as interpreted in Apprendi v. New Jersey, supra, and Cunningham v. California, supra, and Blakey v. Washington, supra.

D. The Error requires reversal.

While the disposition in Blakely did not specify whether the error requires a reversal of the sentence or was susceptible to harmless error analysis, petitioner asserts that this error is structural requiring reversal without employing a prejudice analysis.

68 Chapman itself suggests the analysis consistent with the jury-trial guarantee, the question it instructs the reviewing court to consider is not what effect the constitutional error might generally be expected to have upon a reasonable jury, but rather what effect it had upon the guilty verdict in the case at hand. See Chapman, supra, 386 U.S., at 24 (analyzing effect of error on verdict obtained). Harmless error review looks, we have said, to the basis on which jury actually rested its verdict. Yates v. Evatt 500 U.S. 391 404 (1991) (emphasis added) The inquiry, in other words, is not whether, in a trial that occurred without the error, a guilty verdict actually rendered in this trial was surely unattributable to the error. That must be so, because to hypothesize a guilty verdict that was never in fact rendered no matter how inescapable the findings to support that verdict clark, 478 U.S. 570, 578 (1986); id at 593 (Blackmun, J., dissenting) Pope v. Illinois, 481 U.S. 497, 509-510 (1987) (Stevens, J., dissenting). once the proper Role of an appellate court engaged in the chapman inquiry is understood, the illogic of harmless error revie in the present case becomes evident, since, for the reasons described above, there has been no jury verdict within the meaning of the Sixth Amendment, the entire premise of chapman review is simply absent.

p. 41

There is no object, to speak, upon which Harmless error scrutiny can operate. The most an appellant court can conclude is that a jury would surely have found petitioner guilty beyond a reasonable doubt, not that the jury's actual finding of guilty beyond a reasonable doubt would surely not have been different absent the constitutional error. That is not enough. (See) Yates, supra, 500 U.S. at 413-414 (Scalia, J., concurring in part and concurring in judgment). The sixth Amendment requires more than appellate speculation about a hypothetical jury's action, or else directed verdicts for the state would be sustainable on appeal; it requires an actual jury finding of guilty. (See) Bollenbarch v. united States, 326 U.S. 607, 614 (1946), Sullivan v. Louisiana, supra 508 U.S. at pp. 279-280 [original italics].)

Statutory bases to review the issue also exist under Section 1259, which in relevant part, provides: upon an appeal taken by the petitioner, the appellate court may, without exception having been taken in the trial court, review any question of law involved in any ruling, order, instruction, or thing whatsoever said or done at trial ... and which affected the substantial rights of the petitioner under decisional and statutory authority, then, the denial of petitioners sixth Amendment right to jury trial

on aggravating factors necessary expose him to an upper term affected his substantial rights.

As already discussed, the trial court had no authority to impose the upper term under these circumstances. Cunningham, and Blakely itself, expressly holds such a sentence is unauthorized: when a judge inflicts punishment that the jury verdict alone does not allow, the jury has not found all the facts which the law makes essential to the punishment, [citations] and the judge exceeds his proper authority.

IN Sullivan v. louisiana (1993) 508 U.S. 275, the supreme court held that a constitutionally deficient reasonable-doubt instruction required reversal of the conviction, without a harmless analysis of Chapman v. California (1967) 386 U.S. 18.)

The criteria used by the trial court to impose the consecutive sentences in petitioner's case were the facts which went beyond those proven beyond a reasonable doubt at trial. Therefore, consecutive sentencing in this case violates petitioner's sixth Amendment right to jury trial as interpreted in Apprendi v. New Jersey, supra 120 S.ct 2348 (2000) Cunningham v. California 05-6551 pg. 7.) Blakey v. Washington 124 S.ct 2531. Neder v. united states (1999) 527 u.s. 1, 19.) Here petitioner contested the aggravating factors and set forth mitigating factors in a pre-sentencing memorandum, statement in mitigation of offense, and request to dismiss enhancements. (CT 155-173) Thus, petitioner presented evidence sufficient to support a finding in his favor on the alleged sentencing factors, and failure to present these factors to a jury could not be found to be harmless beyond a reasonable doubt. And the judgment must be reversal.

THE TRIAL COURT PREJUDICIALLY ERRED AND DENIED PETITIONER DUE PROCESS OF LAW WHEN IT INSTRUCTED THE JURY THAT THEY COULD FIND PETITIONR GUILTY OF ROBBERY ON THE BaSIS OF EVIDENCE THAT DID NOT RATIONLLY SUPPORT AN INFFERENCE THAT HE WAS GUILTY OF THAT CRIME.

The trial court instructed the jury with CALJIC No. 2.15 as Follows:

"If you find that Petitioner was in conscious possession of recently stolen property, the fact of such possession is not by itself sufficient to permit an inference that Petitioner is guilty of the crime of Robbery. Before guilt may be inferred, there must be corroborating evidence tending to prove Petitioner guilt. However, this corroborating evidence need only be slight, and need not by itself be sufficient to warrant an inference of guilt.

"As corroboration, you may consider the attributes of possession— time, place and manner, that the Petitioner had an opportunity to commit the crime charged, the Petitioner's conduct, any other evidence which tends to connect the Petitioner with the crime charged (Ct 432; RT 931.)

CALJIC NO. 2.15 permits an inference of guilt without a rational basis, and thus, this instruction violated Petitioner's right to due process of law as guaranteed by the united states constitution.

1. Instruction on CALJIC No. 2.15 Violated Petitioner's right to the 14th Amendment's guarantee of due process of law by suggesting an inference without an adequate basis in fact.

Due process is denied when the court instructs the jury it can infer that a petitioner is guilty of robbery from evidence that does not rationally permit that finding under the circumstances of the particular case. (Ulster County Court v. Allen (1982) Supporting Authority (J.1) [instruction permitting inference not rationally founded violates due process right].) A rational finding or inference requires evidence that makes the fact to be found, or the inference to be drawn more likely to be true than untrue (Ibid

"It is said that the failure to object to instruction in the trial court waives any claim of error unless the failure to object affected the substantial rights of the petitioner, i.e., resulted in a miscarriage of justice, making it reasonably probable the petitioner would have obtained a more favorable rusit in absence of error. (Pen Code, 1259) Ascertaining whether claimed instructional error affected the substantial rights of the petitioner necessarily requires an examination of the merits of the claim — at least to the extent of ascertaining whether the asserted error would result in prejudice if error it was. Accordingly, it seems far better to state —

straightforwardly, as we now do, that an appellate court may ascertain whether the defendant's substantial rights will be affected by the asserted instructional error and, if so, may consider the merits and reverse the conviction if error indeed occurred, even though the petitioner failed to object in the trial court." (Id., at p. 1249.)

There are two infirmities in CALJIC. 2.15 which apply under the circumstances of petitioner's case: (1) the instruction fails to require the jury to determine, beyond a reasonable doubt, that the property found in petitioner's possession was actually stolen property before inferring guilt from its possession; and (2) the instruction allows a permissive inference based on only "slight corroboration" proving petitioner's guilt, thus depriving the petitioner of his due process rights to proof beyond a reasonable doubt. The prosecutor has failed to address petitioner's contention that there was nothing distinctive about the cigars found on petitioner's pocket; they were identical to hundreds of "Swisher Sweet" cigars available for purchase in any liquor store or convenience store. To inform the jury, and to further emphasize during the prosecutor's final argument that petitioner's conscious possession-

of stolen property could be used, with slight corroboration, to infer guilt was, under the circumstances of this case, a denial of due process of law because there was utterly no proof, whatsoever, that the cigars in Petitioner's possession were stolen cigars. Nor was the jury required, with any particular quantum of proof, to find that the cigars were stolen before inferring guilt from their possession. Swisher sweet cigars are no more unique than a pack of camel cigarettes. The fact that CALJIC No. 2.15 has "withstood constitutional scrutiny" in cases which do invole specific, unique items readily identified as stolen property does not mean that the instruction passes constitutional muster in a case which involves inexpensive, ubiquitous items readily available to any adult. Here, as already noted, the cigars found in petitioner's pocket bore no distinctive characteristics linking them to any of the robberies, and there was very weak evidence linking petitioner to the robberies charged in counts 1 through 10. By focusing on one isolated fact, the instruction here permitted the jury to avoid assessing other facts in the case including the lack of identity evidence and the generally weak circumstantial evidence to link Petitioner to the robberies in counts 1 through 10. (SEE) supporting Authority) united (K) states v. warren) united states v. Rubio-Villareal) (J 1)

Rather, the jury was instructed to focus on the bare fact that Petitioner was found in possession of a particular brand of cigar, a fact which had very little evidentiary bearing. A leading commentator has criticized permissive inferences:

"The key problem with permissive inferences is that they isolate and abstract a single circumstance from the complex of circumst-ances presented in any given case, and, on proof of that isolated fact, authorize an inference of some other fact beyond a reasonable doubt... permissive inferences thus permit juries to avoid assessing the myriad facts which makes specific case unique". (Charles R. Nesson. Reasonable doubt and Permissive Inferences: the value of complexity (1979) 92 HARV.L.Rev. 1187, 1192.)

The Ninth Circuit court of Appeal has recently roundly denounced the use of permissive inference instructions:

"[I]nference instructions in general are a bad idea. There is normally no need for court to pick out one of several inferences that may be drawn from circumstantial evidence in order for that possible inference to be considered by the jury.

Inferences can be argued without benefit of an instruction; indeed, inferences are more appropriately argued by counsel than accentuated by the court. Further, because they are a detour from the law which applies to the case, instructions tend to take the focus away from the elements that must be proved. In this way they do a disservice to the goal of clear, concise and comprehensible statements of the law for laypersons on the jury. Balanced inference instructions are also difficult to craft. And, as this case demonstrates, inference instructions create a minefield on appeal. For these reasons, as a practical matter it seems to me both unnecessary and unwise for inference instructions to be requested, or given!! (See) supporting authority (J1) united states v. warren, (Rymer, J., concurring.)[4]

The instruction permitting the jury in Petitioner's case to find him guilty of numerous robberies based on his possession of a few cigars and only "slight" corroborating evidence violated Petitioner's due process rights. The instruction taken as a whole and viewed in the context of the entire trial improperly intruded on the fact finding process, inadequately guided the jury's deliberations, was misleading and confusing, and thus, deprived Petitioner of his due process rights.

P.50

This was a instructional erro was prejudicial to petitioner and requies reveral of the judgment.

IN Ulster County v. Allen, supra, 442 U.S. at p. 167 The instruction permitting inference not rationally found violates due process Right].) A rationally finding or inference requires evidence that makes the fact to be found, or the inference to be draw more likely to be true than untrue. (Ibid United States v. Warren, supra, 25 F.2d 294, 299-300.) United States v. Rubio-Villareal (9th cir (1992) 967 F.2d 294, 299-300.) Rather, the jury was was instructed to focus on the bare fact that petitioner was found in possession of a particular brand of cigar, a fact which had very little evidentiary bearing.

2. The error requires reversal.

Like improper presumption instruction, use of an instruction that invites the jury to draw an inference of guilt without a proper basis requires reversal unless the error was harmless beyond a reasonable doubt. (Schwendeman v. Wallenstein (9th cir (1992.) 971 F.2d 313, 315-316 [reversal consider whether permissive inference instruction was harmless beyond a reasonable doubt].) To find an error harmless, the reviewing court must be convinced that the error did not contribute to the verdict, i.e., that it was insignificant in the context of the evidence the jury consider. (Yates v. Evatt (1991) 500 U.S. 391, 402-407 [114 L.Ed.2d 432, 111 S.Ct. 1884.

For example in united states v. chu (9th cir 1993) 988 F.2d 981, judgment was reversed because of an improper permissive inference instruction. Even though the Ninth Circuit indicated that there was certainly enough evidence from which the jury could have convicted defendant chu of knowing possession of heroin in his suitcase, the court stated that the evidence was not "so overwhelming that we can say with confidence that 'there is no reasonable possibility that the erroneous jury instruction] materially affected the verdict'. (citation.)" (Id., at p. 985.) Here, the challenged instruction could have been the decisive factor in the jury's determination of petitioner's guilt. The prosecutor emphasized that the robber stole cigars and that "those are the kind of cigars [petitioner] has in his pocket." The prosecutor then stated "there was a jury instruction about that from the judge: If you found someone was in possession of recently stolen property, that which [sic] indicates their guilt." (RT 979-980.) Exhibit B1 ) Again, later in his argument, the prosector again brought it to the jury's attention that, "when he's arrested, he has stolen property in his pocket, cigars." RT 983.) (SEE) Exhibit B1 ) Although there was nothing in the nature of those cigars" to have indicated that they were, indeed, stolen.

This is the inference from which a further inference from which a further inference of guilt was urged by the Prosecutor and by CALJIC No. 2.15 under these circumstances, it cannot be said with the requisitite degree of certainty that the erroneous instruction did not materially affect any juror's decision to convict.

Lastly, instructing the jury with CALJIC 2.15 affected Petitioner's substantial right to due process of law because the instruction created an unbalanced charge to the jury. Indeed, CALJIC No. 2.15 - inherently violates these constitutional principles. In Wardius v. Oregon (1973) 412 U.S. 470, 474 FN. 6 [37 L.Ed.2d 82, 93 S.Ct. 2208] the united states supreme court stated that " state trial rules which provide nonreciprocal benefits to the state when the lack of reciprocity interferes with the petitioner's ability to secure a fair trial", violate the petitioner's due process rights under the fourteenth Amendment. (see) also, Washington v. Texas (1967) 388 U.S. 14 [18 L.Ed.2d 1019, 87 S.Ct. 1920].) Noting that the due process clause" does speak to the balance of forces between the accused and his accuser," the court held in Wardius that" in the Absence of a strong showing of state interests to the contrary" there" Must be a two-way street

"as between the prosecution and the defense (Wardius V. Oregon, supra, 412 U.S. at pp. 474-475.)

Although Wardius involved reciprocal discovery rights, the same principle should apply to jury instructions because the law requires absolute impartiality as between the prosecution and defense in the matter of instructions. "Balance" required by Wardius and the due process clause. CALJIC NO. 2.15 is an example of an instruction which fails to satisfy the required balance between prosecution and defense by inviting the jury to draw an inference of guilt from certain evidence. Howerever, no instruction invites the jury to draw an inference from certain evidence. The instructional error was prejudicial to petitioner and requires reversal of the judgment.

THE TRIAL COURT PREJUDICIALLY ERRED AND DENIED PETITIONER DUE PROCESS OF LAW BY INSTRUCTING THE JURY WITH STANDARD CALJIC NO. 2.52 ON FLIGHT WITHOUT ALSO INSTRUCTING THAT JURY MUST FIRST FIND, BEYOND A REASONABLE DOUBT THAT PETITIONER WAS ONE OF THE PERSON'S WHO FLED FROM HONDA, ARE THE PERSON WHO DROPPED THE I.D. CARD AS HE FLED.

1. Introduction

The jury was instructed with CALJIC No. 2.52, which provides:

"The flight of a person immediately after the commission of a crime, or after he is accused of a crime, is not sufficient in itself to establish his guilt, but is a fact which, if proved, may be considered by you in light of all other proved facts in deciding whether a defendant is guilty or not guilty. The weight to which this circumstance is entitled is a matter for you to decide." (Ct 439.)

Here, the identity of the persons who fled from the police was the most hotly contested issue at trial. As such, CALJIC No. 2.52, in its standard from as given here, was an erroneous instruction in that it did not inform the jury that, before they could infer guilt or consciousness of guilt from flight, they must first determine whether or not petitioner was one of the suspects who fled from the police.

2. Applicable law:

CALJIC C 2.52 incorporates statutorily mandated language from Penal Code Section 1127c which provides:

"IN any criminal trial or proceeding where evidence of flight of a defendant is relied upon as tending to show guilt, the court shall instruct ... the jury substantially as follows: The flight of a person immediately after the commission of a crime, or after he is accused of a crime that has been committed, is not sufficient in itself to establish his guilt, but is a fact which, if proved, the jury may consider in deciding his guilt or innocence. The weight to which such circumstance is entitled is a matter for the jury to determine."

Here given the instructions of Caljic No. 2.25 without the necessary modification was not harmless, because there was no evidence that petitioner was ever in the honda. The instruction fails to require the jury to determine, beyond a reasonable doubt, that petitioner was in the honda, before the jury applied an inference of guilt from petitioner's I.D. card, this making the instruction highly prejudicial, due to the discovery of petitioners identificantion card, in the course of the police pursuit, making the instruction a danger that the jury would infer, that it was petitioner who dropped the I.D. card, as the perpertrator fled the scene. This allowing the jury to proceed logically that it was petitioners identificantion card, and that petitioner was the one who dropped the I.D. card. The prosecutor never proved beyond a reasonable doubt, that petitioner was in the honda, Are put fourth evidence beyond a reasonable doubt, that petitioner dropped the identificantion card. (SEE) supporting Authority (A1 winship) Here, the jury was never instructed that they could infer guilt from evidence that "a person" fled immediately after the offense, without first finding beyond a reasonable doubt that the person who fled was indeed petitioner. (see) supporting Authority: (C1) winship) In winship the due process clause requries the government to prove every element of a crime beyond a reasonable doubt.

And if the Government fails on any element of the crime charge, the petitioner must be acquitted. The fact of petitioner's identity, should have been determined beyond a reasonable doubt, before the jury applied an inference of guilt from flight. And the instruction giling does not require this. IN Fact, the instruction only requires proof that "a person" fled from the scene, from which guilt may be inferred. The prosecution did not prove beyond a reasonable doubt, that petitioner was in fact in the getaway car. The prosecution presented accomplice testimony, naming Calvin as the robber, and the individuals who fled from the car, accomplice never identifi petitioner as one person he knew as cAlvin, and gibson testified at trial he did not recognize any one in the courtroom, who participated in the crimes with him (See) Exhibit (B1) (RT 724) (CT 93.) (B1) accomplice never testified that petitioner was ever in the getaway car. And this instructing confusion the jury, as to petitioner and clavin, and the prosecution never presented evidence that petitioner, and clavin was one of the same, and this making the instruction highly prejudicial to petitioner, and this allowing the jury to keep focuse on the fact that petitioner's I.D. card

was found in the police pursuit, The instruction here permitted the jury to avoid assessing other facts, in the case including the lack of identity evidence, Rather, the jury was instructed to focus, on the bare fact that petitioner's identification card was found. There being no physically evidence, linking petitioner to the getaway car, just circumstantial evidence, which was petitioner's i.D. card. And a out of court statement, by accomplice, who at trial testified, that petitioner was not one of the robberys (see) Exhibit (B1) (RT 724) (sct93) (B1) The identity of the petitioner as the persecution must prove at trial beyond a reasonably doubt (see) supporting Authority (C1) Winship) and trial counsel, was ineffective for failing to object to this instructional error. As the eighth circuit has concluded, there can be no facial Re-

RSon for failing to request an instruction that can only benefit the petitioner (see) (K2) supporting Authority Woodward v. Sargent. The instructional error was prejudicial to petitioner and requires reversal of the judgment. If counsel had objected to the instruction, the court might at petitioner's request instruct the jury in this way; There has been evidence that the perpetrator fled immediately after the alleged crime was committed, do not

consider that evidence for any other purpose unless and until you have determined beyond a reasonable doubt that the petitioner was the one who fled.

Due to the discovery of Petitioner's identification card in the course of the police pursuit, there was a danger that the jury would infer that it was Petitioner who dropped the ID card as he fled, rather than first determining if Petitioner was either the person who fled or the person who dopped the ID card. Because identity was so crucial to the prosecution, as well as to Petitioner's defense, it was absolutely necessary that the jury be given clear, definite instructions with regard to flight and identity. To find an error harmless, the reviewing court must be convinced that the error did not contribute to the verdict, i.e., that it was insignificant in the context of the evidence the jury considered. (Yates v. Evatt (1991) 500 U.S. 391, 402-407 (114 L.Ed.2d 432, 111 S.Ct. 1884).)

2. Trial counsel was ineffective for failing to object to the jury instructions which were prejudicial and erroneous under the facts of this case. As noted in Arguments Five and Six, Petitioner trial counsel faild to object to and or request modification of improper jury instructions. This omissions constituted ineffective assistance of counsel. Counsel's omsission resulted in the withdrawal of potentially meritous defenses, which, for the reasons set forth Arguments Five and Six, supra, constituted reversible error. Moreover, by failing to object and/or request modification of these instructions, trial

counsel waived the error and thus foreclosed Petitioner's ability to challenge the instructions in his appeal. further depriving Petitioner of a Potentially Meritorious claim, (See) supporting (k2) Authority Strickland v. washington (1984) 466 u.s. 668, 693-694, 104 s.ct. 2052, 2066.) Due process is denied when the court instructs the jury that if can found Petitioner guilty with out proving beyond a reasonable doubt, that Petitioner was in fact in the Honda, are the perpetrator who dropped the ID card, be for considered by the jury, in light of all other proved facts, in deciding where a defendant is guilty or not guilty. CALJIC No. 2.52 Violated petitioner's 14 Amendment because CALJIC No. 2.52 was suggesting an inference without an adequate basis in fact. There was no physically evidence, that Petitioner was ever in the car. and flight is Irrelevant, because it is a factor "tending to connect an accused with the commission of the offence. And this lessened the prosecutions burden of proving guilt beyond a reasonable doubt. (See) Winship 397 U.S. 359 90 S.Ct. 1068 (1970) There can be no facial reason for failing to request an instruction that can only benefit the Petitioner. Woodward v. Sargent 8th Cir. 1986) 806 F.2d 153, 157.)

In Wong v. U.S. 371 U.S. 471, 83 S.Ct. 407 (1963) (Pate 414) The occupant's Flight from the door Must be regarded as ambiguous conduct. In the instant case, toy's Flight from the door afforded no suler inference of guilty knowledge, than did petitioner's I.D. card as the robber. in Petitioner's case whether a co-defendant's statement might serve to corroborate, even where it will not Sufficient to convict Petitioner. The use of the out of court statement's, is one of admissibility rather than simply of weight, of the evidence. The import of our previous holdings of the court That a co-conspirator's hearsay statements may be admitted, against the accused for no purpose whatever, unless mad dring and in furtherance of the conspiracy, And co-defendant never mad such statement's, in fact co-defendant said petitioner was not one of the Robbers. See Exhibit (ct 724) (Set 93) ( ) Thus as petitioner's only possible source of conviction, and must be set aside for lack of competent evidence to support his conviction. However, on this state of the record, that the jury may have considered contents of co-defendant's statement's, as a source of corroboration, along with the Petitioners I.D. card, to place Petitioner in the getaway car, without proving beyond a reasonable doubt, that Petitioner was

in the car, or the one that dropped the I.D. card before inferring guilt from the I.D. card or co-defendant's statements IN RE Winship 397 U.S. 90 S.Ct. 1068 (1970)

While proving corroboration must be based on more than mere suspicion, Henry v. U.S. 361 U.S. 98, 80 S.Ct. 168, 172) (1956) And this instruction does not require proof sufficient to establish guilt. Draper v. United States 358 U.S. 307, 79 S.Ct. 329, 332) (1959) And only Evidence presented by prosecution was petitioner's Identification card, and which was circumstantial evidence, not placing petitioner in the getaway car. And statement's made made out of court by a co-defendant, who pleaded guilty to the robberies, for a sentence of 16 year for his testimony, And who made inconsistent statement's, And if there is two reasonable interpretation's one which points to petitioner's guilt and the other to [his] innocence, the jury must adopt that interpretation that points to his innocence, and reject that interpretation which point's two [his] guilt. And the evidence was unreasonable for the jury to find petitioner guilt of flight. (Exhibit) (423) (CT2) (B-D-E-F) In Wong v. United States 371 U.S. 471, 83 S.Ct. 407 (1963) (P.P. 13)

It is settled principle of the administration of criminal justice in the federal courts that a conviction must rest upon firmer ground, than the uncorroborated admission or confession of the accused. And CALJIC No. 2.52 Did just that allowing the jury to find petitioner guilt of flight and robber, with no sufficient evidence to place petitier in the car are one of the robberies.

Appellate Court may ascertain whether petitioner's substantial rights will be affected by asserted, instructional error, and if so, may consider merits, and reverse convition if error indeed occured, even though petitioner's failed to object in trial cout. Cal. Penal code (1259) Petitioner presented evidence sufficient to support a finding in his favor. the instructional error was prejudicial to petitioner and requires reversal of the judgment.

Q Okay. Did that person say anything to you?

A Well, yeah. He told me to lay down on the floor. Told me to give him my wallet, my pager. I gave him as he ordered, because he had this gun pointed at my head. He had a silver -- it was like a chrome silver nine automatic handgun.

Q Did you give him your wallet and your pager as commanded?

A Yes.

Q What did you think would happen if you didn't comply?

A If I didn't comply, I thought my life was over. I saw my life flash before me.

Q You were scared?

A Yeah.

Q Did you hand him your wallet or take it --

A I gave it to him as he ordered.

Q Laying on your face on the floor?

A Yeah.

Q Did you get a good look at that person?

A Yeah. All I know he was like Hispanic (white). But even though he had the mask -- all three of them had masks and bandannas around their faces. So I couldn't tell what they look like. All I know, two black and one Hispanic white.

Q One Hispanic white came to you?

A Yeah.
Q Did you see where the other two robbers went?
A One of them had a gun pointed at my boss, the young cashier working that was working with me that night.
Q Do you recall that person's name as you sit here today?
A The robber?
Q Well, if you know the robber's name, we'd like to hear that, but a cashier's name, that would be good, too?
A All I know, they call him "Hamid." I don't know what -- it's some Iranian name.
Q Nayef Sattah. That -- does that sound right?
A Uh-hum.
Q Yes?
A Yes.
Q Do you know the name of the robber?
A No.
Q None of them?
A After they had caught them, Mr. Gibson is the one that had my wallet. How he got it was beyond me, because the guy who robbed me had -- he was Hispanic white.
Q Do you know Mr. Gibson?
A No, never met him.

A I got that four and a half months after the robbery. I had gotten a phone calls from one of the defendant's girlfriend saying that she was getting ready to leave state the next day, which was Monday morning. So she called the San Bernardino P.D. saying that they can meet me at this address.

She gave me the address, which was right around the corner of my house and hadn't had -- had been, I guess, Mr. Gibson's girlfriend, because they told me they knew what he looked like and knew his name. And then shortly after, they caught him afterwards.

Q Okay. And this person gave you your wallet back?

A Yeah. Well, the police officer did.

Q The police officer gave your wallet back.

MR. WEBSTER: Okay. Thank you, sir. I have no further questions at this time.

THE COURT: Mr. Waitman.

**CROSS-EXAMINATION**

BY MR. WAITMAN:

Q I imagine that was a very frightening experience for you?

A Yes, it was.

Q Did you say that your life flashed in front your eyes?

A Yes.

B1

Q Did you enjoy it the second time?

A No, I didn't.

Q Pretty well-focused on the gun?

A Yes, I was.

Q That was a chrome gun?

A Yes.

Q That's what you indicated? You indicate it was the white guy with -- Hispanic guy that is the one who dealt with you directly?

A Uh-hum.

Q Is that yes?

A Yes.

Q Okay. You gave a description of the people to the police; is that correct?

A What I could remember, yes.

Q You told them that they were all about six feet tall?

A I said the other two were, but not the third one. The third one was about my height.

Q Third one is the white guy that took you --

A Yes.

Q The third -- so the white guy was -- or Hispanic guy was about your height?

A Yes.

Q You are about?

A I'm five-four.

Q Five-four. Okay. And you said the

other two were about six-foot?

A Six-foot.

Q Average build; is that correct?

A Yes.

Q At the time you gave those statements to the police, everything was very fresh in your mind; is that right?

A Very much, yes.

Q You told them that one of them had a red shirt, one of them had a black shirt, one of them had a white shirt; is that right?

A Yes.

MR. WAITMAN: Thank you very much.

THE WITNESS: Your welcome.

THE COURT: Any questions?

MR. TAYLOR: No questions, your Honor.

THE COURT: Anything -- any further questions, Mr. Webster?

MR. WEBSTER: Very briefly.

**REDIRECT EXAMINATION.**

BY MR. WEBSTER:

Q Do you remember what color shirt the person who robbed you was wearing as you sit here today?

A He had a white shirt on.

Q Okay. And seeing the video there, did that in any way refresh your memory as to more than one person wearing what would be considered a white

belonged to Tiffany, and through the testimony, she is Defendant Williams's wife. She owned the gold car, yet he didn't say he knew the defendants or their families.

He was involved with Steward in the Jug and Jigger robbery and somehow ended up with property belonging to Eddie Hughes.

No evidence in video of drug use. He was calm, remorseful, even crying, during that video. He never once mentioned a person named Calvin prior to this trial and he I.D.'d Steward in-field prior to being taken by the police station. Then he identified him again during the interview with Detective Williams. He says when he was interviewed that Defendant Gibson -- actually Defendant Steward told him he would be killed if he snitched. And, you know, he spent about 80 to 100 hours just from his testimony, own testimony, with the defendants, just since being arrested on this case after it was known that he had confessed to police about what he had done.

So for all those reasons, those are all factors why you should find Defendant Steward guilty of each of the crimes he's charged with -- counts 1 through 11, personal gun uses, you only have -- and Defendant Williams is guilty in each of the robberies in which he's charged.

And as the judge told you -- and you'll have the instructions -- one of the things you can consider is consciousness of guilt. People do guilty

B1

he's got more than a 5:00 o'clock shadow, but not that much more. It is a little shaggy, shaggy, look and it's not well-defined and it's clearly not to be focused on. He got the clothing description right, got the do-rag description right. You see it on the video. You don't see the do-rag, but you see the lighter pants. Why would defendant have them possibly burned if he wasn't burned? Why get rid of the gloves if he wasn't involved? Why get rid of the sweater if he wasn't involved?

I don't know what to do with the Denny's thing. Again, I assume Mr. Waitman is saying we should have charged him with Denny's also, because we didn't -- didn't commit the other robberies. Mr. Gibson was very clear on which robbery he was involved in.

Mr. Steward was involved with them. You know that Mr. Gibson knew about Tiffany, even though he denies that. And you know that -- I'll leave it at that.

So Mr. -- I don't think Detective Hudson ever showed Gibson I.D. card either for what its worth. You have the video.

Talk about the I.D. card. Again, he showed him another picture of Gibson and Steward, and he identified that person. He showed him a picture of Williams that looked nothing like what Williams looks now or Williams looked in the photo, and he said, No, that's not this guy.

We don't know what the

relationship was. We know he knows the family. We know he has something to do with the Jug and Jigger, and we're not sure -- I don't -- he may be covering for Williams. That again, I'm not saying he's truthful, but you know he is being more truthful when he's implicating himself and not just saying that somebody else did it.

I'm going to leave it at that, but I'll tell you what's going to happen now.

When I sit down, no one can talk to you anymore thankfully. There's a few more instructions to read to you on what to do from this point on. And part of that is to retire to the jury room -- it's a much nicer jury room than this courtroom to work in. And you will choose one among yourselves to act as foreperson. That foreperson will be involved in polling you, taking sample polls as you work through the verdicts. That person will also act as the person to communicate with the Court if you need readback, if you need equipment, if you have questions, or if there's problems. You'll just choose that person among yourselves, whatever method you are comfortable with.

And what the judge will tell you, as you are making a judgment you not do it on chance methods or flipping coins or whoever chooses the highest card gets to say is guilty.

You have a form just like this one and have the foreperson write questions, if you have them, to the court. That same foreperson will also be

but I knew they must have been related to Calvin or something -- some of Calvin's people or something.

Q Who's Calvin?

A Some dude that was in the car.

Q Okay. And do you see Calvin present in this courtroom?

A No.

Q Okay. Now, what -- you recall what the first place was you robbed on that evening or the -- actually, morning hours of October 20th?

A I believe it was the gas station.

Q Which gas station was that?

A The one downtown.

Q Downtown San Bernardino?

A Yes.

Q And what happened there?

A We pulled up.

Q Okay. How many people are in the car at this point?

A Five.

Q This is in gray Honda you previously identified?

A Yes.

Q Where were you seated within the car?

A In the back.

Q Okay. And passenger side or driver's side?

A I believe I was in the middle at that

you the only person who went to preliminary hearing? Was there another person who sat next to you, who was also charged with the same crimes you were charged with?

(Pause while conferring with counsel.)

A Can you repeat the question?

Q Sure. During one of the times you came to court, do you remember coming to court for a preliminary hearing?

A Yes.

Q When you came to court for your preliminary hearing, was there someone else dressed like you are in orange who was also charged with the same crime that you were charged with?

A I don't think during the preliminary hearing, but every now and then, yeah.

Q How many people came to court with you every now and then, who were charged with the same crimes that you were charged with?

A Two.

Q And on how many occasions did these two other people come to court with you?

A Not that often. I have court dates, they wouldn't be there. I have another court date, they be there. I have a court date, they wouldn't be there. Off and on.

Q And would you sit and talk with those individuals while you were in court?

A Not really.

B1

with Detective Hudson he said this about the guy in the blue.

(Tape played at 2:22 p.m.)

MR. WEBSTER: So even before Steward was arrested, Gibson was telling the police that he was being threatened by this person. That's why he would not implicate the defendants here in court.

Next, Count 11, George Kaznni. This is November 7th. This is -- so we have October 20th. Catch Michael Gibson; rest of robbers get away. Two weeks later, Rosie's Market is robbed in broad daylight 10:15 a.m. The co-part is the principal. 11:15 a.m. The co-part is armed in this case. You know the co-part is armed as opposed to Defendant Steward because you can see it in the video. We know Defendant Steward red bandanna. We know he's in beige pants, lighter pants, in the video. You can see pretty clearly from that video that the person with the gun is not the person with the beige pants.

And so there's a gun used. So you have a co-part armed as to that robbery. This was the Rosie's Market in Colton -- register. And what we know from this robbery, again, it's the same kind of cigars that were stolen from the Jug and Jigger, sitting next to the register. The robber who doesn't have the gun, according to Mr. Kaznni, he's stealing cigars from these three bins.

And when they get to

B1

Mr. Steward, those are the kind of cigars he has in his pocket. Mr. Waitman tells you, you can buy these cigars anywhere. That's true. It's more than just a coincident with the identification of him as the robber that he would have those cigars. And there was instruction about that from the judge.

If you find someone was in possession of recently stolen property, that which indicates their guilt.

Mr. Gomez, you heard from his 911 tape. Calls 911. Gives them license plate 53HC237. And we know the real license plate and he got the number off. You can see the 3 and C's aren't that far apart, particularly, if vehicle's traveling very fast, and you want to keep up with it, uncertain of who is in it and why they are running.

But he also identified the particular -- and you know Tiffany Scott Williams's vehicle. Defendant's mom said, No, it was her vehicle. It was in her name. You know, I think Christopher James's temporary permit was found in that car. The receipt is in the name of Tiffany Scott were found in that car. The car matches the description that Mr. Gomez gave on the 911 call, and gave in car -- in fact, he said that is the car. This is a picture of that car. And when more -- when Miss Nickelson, Linda Nickelson, originally asked about the car, at no time, he said the car was driven and brought it back from the shop.

B1

She says, What do you mean? And she says, I was with you. He says, like, at one point says, Yesterday and last night spent the night with me at my brother's house. She said, Who did? And he says, You. You hear me? She says, Uh-huh. And he is doing that all throughout this as he's telling her what he did. What he is telling her is what to tell the police and what to have Twin tell the police about what he was doing during each of these robberies.

Because like he says, he has the best alibis. And you can get the best alibis when you tell people what to say so it matches with what you are going to say. Things that you have -- and this is not an exclusive list, but things which I wanted to point out based on length of trial. And such things would show you either directly or indirectly, which would be circumstantially, Glenn Steward is guilty is, one, his fingerprint was found on an item touched by a robber; that is, during the Jug and Jigger store robbery. You can see on the video, the robber spends time at the cigar cabinet and drops one of those. Yes, fingerprint could have been there for years, but it wasn't. Not a coincidence. It's the same type of property, which ultimately he is found stealing from Rosie's Market is the same type of property stealing here.

He drops a box, leaves his fingerprint identifying himself as one of the robbers.

That, in that jail call, what

be granted for that person for this offense.

I would also indicate that had that rule not been there, the court would feel this is not the kind of case that probation would be contemplated for by this court in view of the fact that there are substantial counts of violence and arming allegations such that the Defendant is well-deserving of a sentence in State Prison.

So at this point in time, the court will deny probation.

The court is has also been afforded with the probation department circumstances in aggravation and circumstances in mitigation.

With respect to the aggravating factors that the court does find at this point in time is I note that the defendant's prior convictions as an adult and participation in juvenile court have been ever increasing and he has served at least one prior prison term in addition to two prior commitments to the California Youth Authority.

I don't find that there's any factors in mitigation.

With respect to consecutive sentences regarding sentencing Rule 4.425, the court notes that these were predominantly separate acts robbery occurred at a number of different locations and they were all involved with separate and distinct persons involved. So the crimes themselves were in fact separate acts of

violence or threats of violence that occurred at different places at different times and they were -- they were not directed -- and directed towards different persons.

The court notes that there was probably a continuous string of robberies that were contained in Counts three through 10. However, though, there was also an opportunity for time to reflect between those robberies as it relates to Counts 3 and 4 prior to the commission of the robberies Counts 5 and 6.

There was also time to reflect and reconsider prior to the robberies Counts 6 and 7 and time to reflect and reconsider prior to the robberies in Counts 8, 9, and 10.

So the court feels that because of the fact that separate crimes were involved, separate victims were involved, separate places and times were involved, that this is an appropriate time to impose consecutive sentences.

I can't really delineate between one victim and the other. There are and have been proven and the jury found true certain enhancements with regards to Count 3, 4, and 5, and also an enhancement pursuant to Penal Code section -- Penal Code section, not only 12022.53(b), which is personal use of a firearm, but also Penal Code section 12022(a)(1), which is co-participants of being armed in the commission.

So at this time the court will sentence

D1

time was this?

A It was at 11 o'clock -- nice, hot day.

Q So it was -- it happened in November; right?

A Uh-hum.

Q Okay. And so the sun was up?

A The sun was up.

Q You had a pretty good look at this guy?

A Yes, I did.

Q And he looked like he does now?

A He had had a do-rag on his head.

Q Had a do-rag on his head? I think you said that he was -- he did not have a mustache or goatee; is that right?

A Yes.

Q He did not have one; correct?

A Yes, sir.

Q Pardon?

A Yes, I stated that.

Q Okay. So this person that did this was clean-shaven; is that right?

A Yes.

Q Okay. And you got a really good look at him?

A Yes.

Q Because from me to you is there maybe 16 feet?

THE COURT: I think it's twelve feet to the

# PROOF OF SERVICE BY MAIL

STATE OF CALIFORNIA )
) SS
COUNTY OF SAN DIEGO )

[C.C.P. §§ 446, 2015.5; 28 U.S.C. §1746]

I, Glenn STEWARd am a resident of the State of California and am over the age of eighteen years and am not a party to the above-entitled action. My address is listed below.

On 4/3/08, I served the following documents:

by placing a true copy thereof enclosed in a sealed envelope with First Class postage thereon fully prepaid in the United States Mail by delivering to prison officials for processing through the Institution's internal legal mail system at San Diego California, addressed as follows::

U.S. District Court, Room 4290, 880 Front Street, San Diego, Ca 92101-8900

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct. Executed in the County of San Diego, California on 4/3/08

V62765 Glenn Steward
1.4.123 LP
P.O. Box 799001
San Diego, CA 92179-9001

**Pursuant to the holding of the United States Supreme Court in Houston v. Lack 108 S. Ct. 2379, 487 U.S. 266, 101 L.Ed.2d 245 (1988) and FRAP, Rule 4 (c) inmate legal documents are deemed filed on the date they are delivered to prison staff for processing and mailing via the Institution's internal legal mail procedures.**

JS44
(Rev. 07/89)

# CIVIL COVER SHEET

FILED
APR - 7 2008
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY DEPUTY

2254 1983
FILING FEE PAID
Yes___ No ✓
IFP MOTION FILED
Yes ✓ No
COPIES SENT TO
Court ✓ Pro Se

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

**I (a) PLAINTIFFS**

**Glenn Lee Steward**

**DEFENDANTS**

**Robert Hernandez**

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** San Diego
**(EXCEPT IN U.S. PLAINTIFF CASES)**

**COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT**
**(IN U.S. PLAINTIFF CASES ONLY)**
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

**Glenn Lee Steward**
**PO Box 799001**
**San Diego, CA 92179**
**V-62765**

**ATTORNEYS (IF KNOWN)**

**'08 CV 0632 BTM CAB**

**II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)**

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III

**III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT (For Diversity Cases Only)**

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY).**

**28 U.S.C. 2254**

**V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)**

**CONTRACT**
☐ 110 Insurance
☐ Marine
☐ Miller Act
☐ Negotiable Instrument
☐ 150 Recovery of Overpayment &Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
☐ 153Recovery of Overpayment of Veterans Benefits
☐ 160 Stockholders Suits
☐ Other Contract
☐ 195 Contract Product Liability

**REAL PROPERTY**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectmant
☐ 240 Tort to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**TORTS**

**PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury

**PERSONAL INJURY**
☐ 362 Personal Injury- Medical Malpractice
☐ 365 Personal Injury - Product Liability
☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/Accommodations
☐ 444 Welfare
☐ 440 Other Civil Rights

**PRISONER PETITIONS**
☐ 510 Motions to Vacate Sentence Habeas Corpus
☒ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights

**FORFEITURE/PENALTY**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**LABOR**
☐ 710Fair Labor Standards Act
720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt. Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc.
☐ Security Act

**BANKRUPTCY**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**SOCIAL SECURITY**
☐ 861 HIA (13958)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS - Third Party 26 USC 7609

**OTHER STATUTES**
☐ 400 State Reappointment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 810 Selective Service
☐ 850 Securities/Commodities Exchange
☐ 875 Customer Challenge 12 USC
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Information Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State
☐ 890 Other Statutory Actions

**VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)**

☒ 1 Original Proceeding ☐ 2 Removal from State Court ☐ 3 Remanded from Appelate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ 6 Multidistrict Litigation ☐ 7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23 **DEMAND $** Check YES only if demanded in complaint: **JURY DEMAND:** ☐ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY (See Instructions):** JUDGE Docket Number

DATE 4/7/2008

~~SIGNATURE OF ATTORNEY OF RECORD~~

R. Mullen

